GEORGE TAYLOR,

        Plaintiff,

      v.                                      Case No. 25-cv-0383-bbc

KENYA MASON et al.,

        Defendants.

## DECISION AND ORDER DENYING DEFENDANTS'
## MOTION FOR SUMMARY JUDGMENT

Plaintiff George Taylor is an inmate at the Stanley Correctional Institution and representing himself in this 42 U.S.C. §1983 action. He is proceeding on an Eighth Amendment conditions-of-confinement claim based on allegations that he suffered burns, eye damage, and breathing issues because Defendants denied his repeated requests that he be given protective gear to wear while he used a cleaning spray while working as a unit shower cleaner. On January 9, 2026, Defendants filed a motion for summary judgment. The motion was fully briefed on February 23, 2026. Taylor has filed three motions to file supplemental facts in support of his opposition to the motion and a motion for leave to file a sur-reply. For the reasons explained below, the Court will deny Defendants' summary judgment motion and Taylor's motions for leave to file supplemental facts and for leave to file a sur-reply.

### BACKGROUND

At the relevant time, Taylor was a prisoner housed at the Racine Correctional Institution, where Defendants worked as corrections staff. Taylor worked as a unit shower cleaner from October 2024 through December 2024. He states that he asked Defendants for protective rubber

gloves, a face mask, and protective eye gear, all of which was kept in the sergeant's bubble, but they denied his requests and told him to be careful. Dkt. No. 1; Dkt. No. 24 at ¶¶1-2; Dkt. No. 30 at ¶¶12-13.

On December 11, 2024, Taylor was seen by Dr. Darwin Chentnick after he was sprayed with shower cleaner in his eyes. Taylor's eyes were flushed with water for about fifteen minutes, after which Taylor stated that his eyes felt better. The next day, however, Taylor submitted a health services request complaining that his vision was blurry and his eyes stung. On December 13, 2024, a nurse examined Taylor and noted that his eyes appeared normal with no irritation present. Taylor asserts that his eyes felt irritated and his vision was blurry. The nurse informed Taylor to continue flushing his eyes daily with water and to use the eye drops as directed. Dkt. No. 24 at ¶¶6-10.

A few days later, on December 16, 2024, Dr. Chentnick saw Taylor during a follow-up appointment. Taylor stated that he had no eye pain, but his vision was slightly blurry and his eyes burned. Dr. Chentnick noted that Taylor's eyes were "white and quiet" but very dry. He instructed Taylor to increase his use of the eye drops to at least eight times per day. Taylor explains that prior to having the cleaner sprayed in his eyes, he never experienced dry eyes, blurry vision, burning eyes, or loss of vision, but he has continued to experience all those symptoms since getting the cleaner in his eyes. Dkt. No. 24 at ¶¶11-12; Dkt. No. 30 at ¶¶9-10; Dkt. No. 21-1 at 11-12.

## LEGAL STANDARD

Summary judgment is appropriate when the moving party shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). "Material facts" are those under the applicable substantive law that "might affect the outcome of the suit." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A

2

dispute over a "material fact" is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id*. All reasonable inferences are construed in favor of the nonmoving party. *Foley v. City of Lafayette*, 359 F.3d 925, 928 (7th Cir. 2004). The party opposing the motion for summary judgment must "submit evidentiary materials that set forth specific facts showing that there is a genuine issue for trial." *Siegel v. Shell Oil Co.*, 612 F.3d 932, 937 (7th Cir. 2010) (citations omitted). "The nonmoving party must do more than simply show that there is some metaphysical doubt as to the material facts." *Id*. Summary judgment is properly entered against a party "who fails to make a showing sufficient to establish the existence of an element essential to the party's case, and on which that party will bear the burden of proof at trial." *Parent v. Home Depot U.S.A., Inc.*, 694 F.3d 919, 922 (7th Cir. 2012) (internal quotations omitted).

## ANALYSIS

Under the Eighth Amendment, "prison officials must take reasonable measures to ensure an inmate's safety." *Christopher v. Buss*, 384 F.3d 879, 882 (7th Cir. 2004) (citing *Farmer v. Brennan*, 511 U.S. 825, 832 (1994)). To prevail on a claim premised on prison officials' failure to protect him from harm, a plaintiff must provide evidence from which a jury could reasonably conclude that the defendants knew of and disregarded an 'excessive risk' to his 'health and safety.'" *Id*. (citing *Farmer*, 511 U.S. at 837). Courts evaluate the risk an inmate faces on an objective basis; that is, "the allegedly dangerous prison condition must deprive an inmate of the 'minimal civilized measures of life's necessities.'" *Id*. (citing *Farmer*, 511 U.S. at 834).

Defendants assert that they are entitled to summary judgment because Taylor never faced an objectively serious risk of harm. Moreover, they assert that any injury he may have suffered was temporary and minor and therefore not cognizable under the Eighth Amendment. *See Lord v. Beahm*, 952 F.3d 902, 905 (7th Cir. 2020). As to their first argument, Defendants note that Dr.

3

James Richter, the Optometry Supervisor with the Corrections Bureau of Health Services, states that the cleaner Taylor was using—Clean by 4D—is an acidic-based concentrate designed as a multi-surface disinfectant for healthcare settings. Dr. Richter explains that an acidic-based cleaner is the safest cleaner to use because it dissipates and neutralizes as soon as it hits water. He asserts that, while it may cause eye irritation or may sting the eyes, exposure will not have any long-term effects. Dkt. No. 24 at ¶¶16-18.

Taylor disputes Dr. Richter's characterization of Clean by 4D's safety by attaching the "Safety Data Sheet" for Clean by 4D. Dkt. No. 26-1 at 10. Under the "Hazard Statements" section, it states: "Harmful if swallowed. Harmful if inhaled. Causes skin irritation. Causes serious eye damage." Under the "Precautionary Statements" section, it states: "Use only outdoors or in a well-ventilated area. . . . Wear protective gloves. Wear eye / face protection." And, under the "Response" section it states: "IF IN EYES. Rinse carefully with water for several minutes. . . . Continue rinsing. IMMEDIATELY CALL A POISON CENTER OR PHYSICIAN." *Id.* at 10, 16.[1] Defendants do not dispute that Clean by 4D cleaner can cause death if inhaled, and they dispute only that Taylor suffered any irreversible or long-term eye damage; they do *not* dispute that "Clean by 4d can also cause irreversible eye damage if gotten in the eyes." Dkt. No. 30 at ¶¶3-4; *see also* Dkt. No. 26-1 at 26 (warning label that states "DANGER. Corrosive. Causes irreversible eye damage and skin burns.").

Dr. Richter, who is an optometrist, does not explain why he believes that Clean by 4D does not pose a serious risk despite the clear and rather ominous warnings on the Clean by 4D safety sheet and warning label. His say-so without explanation despite clear warnings from the

---

[1] The Court notes that Taylor also attaches the "Safety Summary Sheet" for the Clean by 4D user-prepared solution, which notes that exposure may cause only "moderate eye irritation." Dkt. No. 26-1. Neither party provides evidence of whether Taylor was exposed to the concentrate or a diluted "user-prepared solution," and the Court will not speculate on this point.

4

manufacturer about the dangers the product may pose is insufficient at summary judgment. A jury could reasonably conclude based on the numerous warnings, that Taylor did in fact face an objectively serious risk of harm when he was required to interact with the cleaner without the recommended protective gear. Accordingly, Defendants are not entitled to summary judgment on this basis.

They also are not entitled to summary judgment on the basis that Taylor suffered no cognizable harm. Taylor disputes that he suffered no long-term serious effects from having the spray splashed into his eyes. Defendants point to medical records that indicate Taylor said he felt better after rinsing his eyes with water for fifteen minutes and that a few days later, he denied eye pain and blurry vision during a blood pressure check. Taylor, on the other hand, provides medical records showing that he has consistently complained of blurry vision and stinging eyes since the exposure. Moreover, within days of the exposure and in response to Taylor's persistent complaints, Dr. Chentnik diagnosed Taylor with very dry eyes and prescribed the use of superficial tears up to eight times per day. Taylor explains that he experienced none of these issues prior to getting the spray in his eyes and that he continues to receive treatment for his eye conditions. Based on Taylor's evidence, a jury could reasonably conclude that he was harmed as a result of exposure to the spray. Taylor will be required to prove the extent of that harm at trial. As noted above, Taylor sought leave to file supplemental facts and a sur-reply, but his response materials created a triable issue of material fact without this additional information, so the Court will deny his motions. In short, Defendants are not entitled to summary judgment and Taylor's claim will proceed to trial.

Given the complexity of trying a case before a jury, including offering a coherent opening statement and closing argument, presenting and examining witnesses, and locating and introducing

evidence, the Court concludes that Taylor will benefit from the assistance of counsel in the next stage of litigation. Accordingly, the Court will make efforts to recruit a volunteer lawyer to represent him. The demand for volunteer lawyers is high, but the supply is low. Few lawyers have the time, ability, or experience to volunteer for cases such as these. The Court encourages Taylor to be patient as it makes efforts to recruit a lawyer to represent him. The process may take some time. The Court will promptly notify Taylor in the event a lawyer volunteers. In the meantime, the Court encourages the parties to explore settlement. If the parties would like to try mediation, the Court can refer the case to a magistrate judge for that purpose. If at any time Taylor decides he would like to proceed on his own without a lawyer, he should promptly notify the Court, and the Court will schedule a status conference to set a trial date.

**IT IS THEREFORE ORDERED** that Defendants' motion for summary judgment (Dkt. No. 18) is **DENIED**.

**IT IS FURTHER ORDERED** that Taylor's motion for leave to file supplemental facts and his motion for leave to file a sur-reply (Dkt. Nos. 27, 31, 32, 33) are **DENIED**.

Dated at Green Bay, Wisconsin this 1st day of April, 2026.

s/ *Byron B. Conway*

Byron B. Conway
United States District Judge